# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANDRE BROWN,<br><br>    Petitioner,<br><br>    v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Respondent. | 1:04-cv-5696-OWW-TAG HC<br><br>FINDINGS AND RECOMMENDATIONS TO DENY AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 8)<br><br>ORDER REQUIRING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation as a result of a February 20, 2002 conviction in the Superior Court of California, County of Kern (the "Superior Court") following a plea of no contest to charges of assault with a machine gun (Cal. Pen. Code § 245(a)(3)), and permitting another to discharge a firearm from a vehicle (Cal. Pen. Code § 12034(b)), along with admitting an enhancement allegation that Petitioner committed the offenses for the benefit of, or at the direction of a criminal street gang (Cal.Pen. Code § 186.22(b)(1)). (Clerk's Transcript on Appeal ("CT") 619). Petitioner was sentenced to the middle-term of eight years on the assault charge, a term of eight months for the § 12034(b) charge, and a term of five years for the gang enhancement, for a total prison term of thirteen years, eight months. (Id.).

Petitioner filed a direct appeal of his conviction in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the judgment and sentence on July 8, 2003, in an

unpublished opinion. (Lodged Document ("LD") 4). Petitioner filed a petition for review in the California Supreme Court on August 18, 2003, which was denied on October 1, 2003. (LD 5). Subsequently, Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which denied the petition on March 22, 2004. (LD 6, 7).

On May 13, 2004, Petitioner filed the instant federal petition. (Doc. 1). On September 22, 2004, Petitioner, pursuant to the Court's order, filed an amended petition. (Doc. 8). On April 13, 2005, Respondent filed an answer. (Doc. 15). On August 8, 2005, Petitioner filed a traverse. (Doc. 23). Respondent concedes that, if cognizable, Petitioner's sole claim in this petition has been exhausted. (Doc. 15, p. 3).

## FACTUAL BACKGROUND

The Court adopts the facts as summarized by the 5th DCA, in relevant part, as follows:

> Before beginning his shift on the gang enforcement unit, Bakersfield police officer Clayton Madden was informed that defendant Collins[1] had been shot earlier that day. Collins was a member of the West Side Crips and was believed to have been shot by a member of the rival Bloods. Later during their shift, Madden and his partner, Gary Carruesco, received a radio report of shots fired from "an SUV type vehicle" at an apartment complex in Blood territory. Believing the shooting to be in retaliation for the one earlier in the day, the officers proceeded to "the heart" of the West Side Crips territory.
>
> Not more than two minutes after the broadcast, as the officers were stopped at a stop sign some 4-to-10 miles from the shooting site, an SUV-type vehicle drove by on the cross street, coming from the direction of the shooting. The officers could see that the car held several occupants but could not determine their ethnicity. The officers did see that the right backup light cover was broken and the bulb was broken or missing.
>
> When Carruesco pulled behind the SUV and initiated a traffic stop, the vehicle "slowly veered to the right, to the west curbline," but "[i]t then proceeded back into the roadway and continued southbound." As the officers followed, the SUV again moved toward the right curb and, while the car was still moving slowly, Jeffrey jumped out of the right rear passenger door with his hand on his waistband. As Madden gave chase, he saw Jeffrey throw away what appeared to be a gun. Madden yelled to Carruesco that the runner had a gun and continued his pursuit, eventually catching up to Jeffrey and arresting him.

---

[1] Petitioner was originally charged along with co-defendants Jeffrey Brown and Ralph Alfred Collins, each of whom, like Petitioner, pled no contest to a charge of assault with a machine gun or assault weapon and an enhancement allegation that the offenses were committed in furtherance of a criminal street gang. (LD 4, p. 2).

2

> Carruesco continued to follow the SUV, which stopped, finally, four blocks from where Carruesco first turned on the police car's overhead lights. Carruesco detained the driver, Deandre, and the passenger, Collins, both of whom proved to be on active parole, subject to search-and-seizure conditions.

(Doc. 15, LD 4, pp. 2-3).

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). Accordingly, the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act (AEDPA), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The original petition was filed on May 13, 2004, after the enactment of the AEDPA, and thus it is governed by the AEDPA.

### II. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the adjudication of a prisoner's claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams v. Taylor, 529 U.S. at 412-413.

///

3

The first prong of federal habeas review involves the "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1). This prong pertains to questions of law and mixed questions of law and fact. Williams v. Taylor, 529 U.S. at 407-410; Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005)(citing Williams v. Taylor, 529 U.S. at 405). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141. Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003)(citing Williams v. Taylor, 529 U.S. at 409). Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. at 412; Barker v. Fleming, 423 F. 3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637 (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004). The AEDPA also requires that

4

considerable deference be given to a state court's factual findings. A state court's factual findings are presumed to be correct, and such presumption of correctness may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court must independently review the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 981-982 (9th Cir. 2002). Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).–

### III. Petitioner's Substantive Claim Should Be Denied

Petitioner has raised the following issue in the instant petition:

**Ground One**     **The Trial Court Erred In Denying Petitioner's Motion To Suppress Because The Arresting Officers Did Not Have Probable Cause To Stop The Vehicle .**

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**Ground One**     **The Trial Court Erred In Denying Petitioner's Motion To Suppress Because The Arresting Officers Did Not Have Probable Cause To Stop The Vehicle .**

Petitioner's sole ground for relief contends that his conviction was obtained using evidence gained pursuant to an unconstitutional search and seizure. (Doc. 8, p. 5). Petitioner contends that the arresting officers lacked probable cause to stop the vehicle occupied by Petitioner and his co-defendants. This contention, however, is not legally cognizable and therefore Petitioner's claim must be denied.

///

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465, 481-482, 494 (1976); Woolery v. Arave, 8 F.3d 1325, 1326 (9th Cir. 1993). The only inquiry this Court can make is whether Petitioner had a full and fair opportunity to litigate his claim, not whether Petitioner did litigate his claim or even whether his claim was correctly decided. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary).

The policy behind the Supreme Court's analysis in Stone is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement. Stone v. Powell, 428 U.S. at 492. However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See Stone, 428 U.S. at 489-490; Woolery, 8 F.3d at 1327-1328. Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery v. Arave, 8 F.3d at 1326; see also Stone, 428 U.S. at 493-494.

Petitioner's Fourth Amendment claim was litigated through a suppression hearing in the trial court on January 9, 2002, on direct appeal to the California Court of Appeals for the Fifth Appellate District, and in a petition for review before the California Supreme Court. In a lengthy suppression hearing in the trial court, Officers Madden and Carruesco testified and were subject to cross-examination by Petitioner's counsel as well as co-defendants' counsel. (CT 441-526). The attorneys argued the legal issues relating to probable cause, and defense counsel were sufficiently persuasive that when the prosecution rested, the trial court told the prosecutor that she would need to present more evidence regarding what the two officers knew about a possible retaliation shooting

before he could find probable cause for the stop. (CT 506). The prosecution then re-called Carruesco, who detailed what the two officers knew and when. (CT 506-517). Madden was then re-called by the defense in an apparent attempt to contradict Carruesco's recollection. (CT 518). Afterward, the trial court found that probable cause existed for the stop. (CT 524). As mentioned, Petitioner's claim that the trial court erred was subsequently rejected by both the 5th DCA and the California Supreme Court.

Petitioner was provided an opportunity for a full and fair litigation of his Fourth Amendment claim during the motion proceedings in the Superior Court and thereafter in the 5th DCA. Petitioner does not allege that any of these state court proceedings were inadequate or that he was deprived of a full and fair opportunity to litigate this issue; rather, he merely contends that the state court incorrectly decided the matter against him. (Doc. 8, pp. 1-4 (Supporting Facts For Ground One).[2] When the state court has provided an opportunity for full and fair litigation of a Fourth Amendment claim, Stone precludes habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at the petitioner's trial. Stone, 428 U.S. at 481-482, 484. Consequently, Petitioner's habeas claim that the suppression motion was incorrectly decided by the state court must be denied.

## RECOMMENDATIONS

Accordingly, the Court RECOMMENDS that the Amended Petition for Writ of Habeas Corpus (Doc. 8), be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the court

---

[2] In Petitioner's lengthy traverse, instead of addressing why he did not have a "full and fair" opportunity to litigate the issue, he re-argues the same legal points raised in the amended petition regarding why Petitioner believes that the trial court incorrectly decided the issue. (Doc. 23). Petitioner's only response to Respondent's argument that Stone precludes review is his statement that his claim was cognizable "because appeal courts did not applie [sic] established case law correctly to the facts of this particular case." (Id. at p. 11).

1  and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate
2  Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within
3  ten (10) court days (plus three days if served by mail) after service of the objections.  The District
4  Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The
5  parties are advised that failure to file objections within the specified time may waive the right to
6  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8  IT IS SO ORDERED.
9  Dated:   **September 27, 2007**                                  /s/ Theresa A. Goldner
                                                           UNITED STATES MAGISTRATE JUDGE